Rafael Garcia Flores
NAME
F·22302
PRISON NUMBER

P.O. Box 911 - Centinela State Prison
CURRENT ADDRESS OR PLACE OF CONFINEMENT

Imperial, CA. 92251
CITY, STATE, ZIP CODE

FILED

JUN 1 8 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Rafael Garcia Flores
(FULL NAME OF PETITIONER)

PETITIONER

v.

Director of Corrections - Tilton
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

RESPONDENT

and

_____,

The Attorney General of the State of
California, Additional Respondent.

Civil No. _____
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

'08 CV 1086 BEN BLM

" Evidentiary Hearing Requested"

### PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: _____
San Diego Superior Court, Southbay

2. Date of judgment of conviction: 3·23·2006

3. Trial court case number of the judgment of conviction being challenged: SCS 192285 &
SCD 189869

4. Length of sentence: 11 yrs @ 80%

CR

5.  Sentence start date and projected release date: 3·23·2006 , 10·13·2013

6.  Offense(s) for which you were convicted or pleaded guilty (all counts): VC 2800.2 (a) ;
    P.c. 12021 (a)(1) ; P.c. 12025 (a)(1) ; P.c. 12031(a)(1) ; VC 2800.2 (a)

7.  What was your plea? (CHECK ONE)
    (a)  Not guilty        ☑
    (b)  Guilty            ☐
    (c)  Nolo contendere   ☐

8.  If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
    (a)  Jury       ☑
    (b)  Judge only ☐

9.  Did you testify at the trial?
    ☐ Yes  ☑ No

**DIRECT APPEAL**

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☑ Yes  ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a)  Result: Amended sentence
    (b)  Date of result, case number and citation, if known: 3·6·2008

    (c)  Grounds raised on direct appeal: See attached brief

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a)  Result: Denied
    (b)  Date of result, case number and citation, if known: 1·3·2008 – S158279

    (c)  Grounds raised: See Attached Brief

13. If you filed a petition for certiorari in the <u>United States Supreme Court</u>, please answer the following with respect to that petition:

   (a) Result: ___N/A___

   (b) Date of result, case number and citation, if known: ___N/A___

   _____

   (c) Grounds raised: ___N/A___

   _____

   _____

   _____

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Superior Court</u>?
   ☑ Yes  ☐ No

15. If your answer to #14 was "Yes," give the following information:

   (a) <u>California Superior Court</u> Case Number: HSC 10821 ; SCS192235 ;  APPELLATE CASE NO. D048488

   (b) Nature of proceeding: Writ of Habeas Corpus

   _____

   (c) Grounds raised: Trial Court improperly denied defense motion to sever.

   _____

   _____

   _____

   (d) Did you receive an evidentiary hearing on your petition, application or motion?
      ☐ Yes  ☑ No

   (e) Result: Denied

   (f) Date of result: MAY 16, 2006

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Court of Appeal</u>?
   ☐ Yes  ☑ No

17. If your answer to #16 was "Yes," give the following information:

    (a) **California Court of Appeal** Case Number: N/A

    (b) Nature of proceeding: N/A

    (c) Grounds raised: N/A

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
       ☐ Yes   ☑ No

    (e) Result: N/A

    (f) Date of result: N/A

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☐ Yes   ☑ No

19. If your answer to #18 was "Yes," give the following information:

    (a) **California Supreme Court** Case Number: N/A

    (b) Nature of proceeding: N/A

    (c) Grounds raised: N/A

    (d) Did you receive an evidentiary hearing on your petition, application or motion?

       ☐ Yes   ☑ No

    (e) Result: N/A

    (f) Date of result: N/A

20. If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the <u>California Supreme Court</u>, containing the grounds raised in this federal Petition, explain briefly why you did not:

    N/A _____

    _____

    _____

    _____

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
    ☑ Yes ☐ No    (IF "YES" SKIP TO #22)
    (a) If no, in what federal court was the prior action filed? _____
       (i) What was the prior case number? _____
       (ii) Was the prior action (CHECK ONE):
          ☐ Denied on the merits?
          ☐ Dismissed for procedural reasons?
       (iii) Date of decision: _____
    (b) Were any of the issues in this current petition also raised in the prior federal petition?
       ☐ Yes ☐ No
    (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
       ☐ Yes ☐ No

<u>CAUTION:</u>

- <u>**Exhaustion of State Court Remedies:**</u>  In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court.  This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- <u>**Single Petition:**</u>  If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- <u>**Factual Specificity:**</u>  You must state facts, not conclusions, in support of your grounds.  For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do.  A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

### GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

   (a) **GROUND ONE**: See Brief in support of Petition

"Brief Contains all grounds 1 - 4 "

Supporting FACTS (state *briefly* without citing cases or law)

Did you raise **GROUND ONE** in the California Supreme Court?
☑ Yes ☐ No.

(b) **GROUND TWO**: _____

_____

_____

Supporting **FACTS** (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Did you raise GROUND TWO in the California Supreme Court?
☑ Yes ☐ No.

(c) **GROUND THREE**: _____

_____

_____

**Supporting FACTS** (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND THREE in the California Supreme Court?**

☒ Yes ☐ No.

(d) **GROUND FOUR**: _____

_____

_____

**Supporting FACTS** (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND FOUR in the California Supreme Court?**

☑ Yes ☐ No.

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes  ☑ No

24. If your answer to #23 is "Yes," give the following information:
   (a)  Name of Court: _____
   (b)  Case Number: _____
   (c)  Date action filed: _____
   (d)  Nature of proceeding: _____

            _____

   (e)  Grounds raised: _____

            _____

            _____

            _____

            _____

   (f)  Did you receive an evidentiary hearing on your petition, application or motion?
     ☐ Yes  ☐ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
   (a)  At preliminary hearing: Public Defender - Luis Guerrero

   (b)  At arraignment and plea: Lee Plummer esq.

   (c)  At trial: LEE Plummer

   (d)  At sentencing: Lee Plummer

   (e)  On appeal: Donna L. Harris
   (f)  In any post-conviction proceeding: NONE

   (g)  On appeal from any adverse ruling in a post-conviction proceeding: NONE

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☑ Yes  ☐ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes  ☑ No

   (a) If so, give name and location of court that imposed sentence to be served in the future:
   _____

   (b) Give date and length of the future sentence: _____
   _____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   ☐ Yes  ☑ No

28. Date you are mailing (or handing to a correctional officer) this Petition to this court: _____
_____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

*6·15·2008* _____     _____

(DATE)                                    SIGNATURE OF PETITIONER

FILED

JUN 1 8 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT
OF CALIFORNIA

'08 CV 1086 BEN BLM

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, ) <br><br> Plaintiff and Respondent, ) <br><br> v. ) <br><br> RAFAEL G. FLORES, ) <br><br> Appellant and Petitioner. ) | CASE NO._____ |

BRIEF IN SUPPORT OF PETITION

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ................................................................... iii

PETITION FOR REVIEW ........................................................................ 1

NECESSITY FOR REVIEW ..................................................................... 2

STATEMENT OF FACTS.......................................................................... 3

STATEMENT OF THE UNDERLYING PROCEEDINGS ........................ 4

ARGUMENT AND AUTHORITY ............................................................ 4

    THE TRIAL COURT'S ERROR IN GRANTING THE
    PROSECUTOR'S MOTION TO CONSOLIDATE TWO
    CASES RESULTED IN A DENIAL OF PETITIONER'S
    RIGHT TO DUE PROCESS AND A FAIR DETERMINATION
    OF GUILT AND PUNISHMENT ............................................................. 4

       *The Applicable Law* ........................................................................... 5

       *Cross-Admissibility of Evidence* ....................................................... 7

       *Inflaming the Jury*.............................................................................. 9

       *Combining Strong Case with Weak Case* ........................................... 13

       *Conclusion* ......................................................................................... 14

    PETITIONER'S CONVICTION MUST BE REVERSED
    BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION
    BY ALLOWING THE PROSECUTOR TO ELICIT
    INFLAMMATORY AND IRRELEVANT TESTIMONY
    ABOUT MELISSA'S PREGNANCY.................................................... 16

    THE AGGRAVATED SENTENCE IMPOSED ON COUNT
    ONE AND THE CONSECUTIVE SENTENCES IMPOSED
    IN COUNTS THREE AND FIVE MUST BE REVERSED
    BECAUSE THE SENTENCE WAS BASED ON AGGRAVATING

FACTS NOT FOUND TRUE BY A JURY ............................................ 18

    *A. The trial court's imposition of an aggravated sentence
    on count one and consecutive sentences in counts three
    and five without first affording petitioner a jury trial on
    the existence of aggravating factors was error under
    Cunningham* ................................................................................ 18*

    *B. Recidivism-based factors* ............................................... *19*

    *C. Consecutive sentences and Cunningham* ....................... *24*

    *D. The violation of petitioner's right to jury trial and
    proof beyond a reasonable doubt was not harmless* ............ *25*

THE APPROPRIATE REMEDY IN THIS MATTER IS
THE MODIFICATION OF PETITIONER'S SENTENCE
TO THE MIDDLE TERM ON COUNT ONE AND
CONCURRENT SENTENCES IN COUNTS THREE
AND FIVE BECAUSE A REMAND FOR RESENTENCING
UNDER *SANDOVAL* WOULD DENY PETITIONER DUE
PROCESS AND VIOLATE HIS CONSTITUTIONAL
PROTECTION AGAINST DOUBLE JEOPARDY ............................... 31

    *A. Due process and the ex post facto clause* ....................... *33*

    *B. Double Jeopardy under the United States and
    California Constitutions* ..................................................... *37*

CERTIFICATION OF WORD COUNT ....................................... 40

# TABLE OF AUTHORITIES

<u>Cases</u>

*Almendarez-Torres v. United States* (1998) 523 U.S. 224
    [118 S.Ct. 1219, 140 L.Ed.2d 350] ........................................ 19, 20, 23

*Apprendi v. New Jersey* (2000) 530 U.S. 466
    [120 S.Ct. 2348, 147 L.Ed.2d 435] ............................................. 19, 20

*Belton v. Superior Court* (1993) 19 Cal.App.4th 1279 ................................ 15

*Benton v. Maryland* (1969) 395 U.S. 784
    [89 S.Ct. 2056, 23 L.Ed.2d 707] ......................................................... 37

*Blakely v. Washington* (2004) 540 U.S. 296
    [124 S.Ct. 2531, 159 L.Ed.2d 403] ..................................................... 19

*Bouie v. City of Columbia* (1964) 378 U.S. 347
    [84 S.Ct. 1697, 12 L.Ed.2d 894] ......................................................... 35

*Carmell v. Texas* (2000) 529 U.S. 513
    [120 S.Ct. 1620, 146 L.Ed.2d 577] ..................................................... 36

*Crist v. Bretz* (1978) 437 U.S. 28
    [98 S.Ct. 2156, 57 L.Ed.2d 24] ........................................................... 38

*Cunningham v. California* (2007) 549 U.S. ___
    [127 S.Ct. 856, 166 L.Ed. 856] ................................. 19, 24, 29, 32, 34

*Green v. United States* (1957) 355 U.S. 184
    [78 S.Ct. 221, 2 L.Ed.2d 199] ............................................................. 39

*North Carolina v. Pearce* (1969) 395 U.S. 711
    [89 S.Ct. 2072, 23 L.Ed.2d 656] ......................................................... 38

*Oregon v. Kennedy* (1982) 456 U.S. 667
    [102 S.Ct. 2083, 72 L.Ed.2d 416] ....................................................... 38

*People v. Bean* (1986) 46 Cal.3d 919 .............................................................. 6

*People v. Belmontes* (1983) 34 Cal.3d 335 ............................................. 24, 25

*People v. Black* (2007) 41 Cal.4th 799............................................20, 24, 25

*People v. Bradford* (1997) 15 Cal.4th 1229 ....................................................6

*People v. Carter* (2005) 36 Cal.4th 1215 ......................................................37

*People v. Cook* (2006) 39 Cal.4th 566 ............................................................7

*People v. Falsetta* (1999) 21 Cal.4th 903......................................................17

*People v. Fields* (1996) 13 Cal.4th 289 ....................................................37, 38

*People v. Hicks* (1993) 6 Cal.4th 784............................................................25

*People v. Johnson* (1988) 47 Cal.3d 576 ......................................................14

*People v. Kraft* (2000) 23 Cal.4th 978 ............................................................6

*People v. Manriquez* (2005) 37 Cal.4th 547 ....................................................6

*People v. Marshall* (1996) 13 Cal.4th 799 ....................................................38

*People v. Massie* (1998) 19 Cal.4th 550 ......................................................38

*People v. Mendoza* (2000) 24 Cal.4th 130 ......................................................7

*People v. Morganti* (1996) 43 Cal.App.4th 643............................................14

*People v. Ochoa* (1998) 19 Cal.4th 353 ......................................................6, 7

*People v. Prieto* (2004) 124 Cal.App.4th 941 ..............................................25

*People v. Sandoval* (1992) 4 Cal.4th 155......................................................14

*People v. Sandoval* (2007) 41 Cal.4th 825................................25, 27-35, 37

*People v. Stitely* (2005) 35 Cal.4th 514..........................................................6

*People v. Williams* (1998) 17 Cal.4th 148 ....................................................15

*Raven v. Deukmejian* (1990) 52 Cal.3d 336..................................................38

*Rogers v. Tennessee* (2001) 531 U.S. 451
[121 S.Ct. 1693, 149 L.Ed.2d 697] ................................. 34, 35, 36, 37

*Schiro v. Farley* (1994) 510 U.S. 222
[114 S.Ct. 783, 127 L.Ed.2d 47] ........................................ 38

*Shepard v. United States* (2005) 544 U.S. 13
[125 S.Ct. 1254, 161 L.Ed.2d 205] ................................ 20, 21, 22, 23

*Taylor v. United States* (1990) 495 U.S. 575
[110 S.Ct. 2143, 109 L.Ed.2d 607] ....................................... 21, 23, 24

*Washington v. Recuenco* (2006) ___ U.S. ___
[126 S.Ct. 2546, 165 L.Ed.2d 466] ............................................ 25, 26

United States Constitution

Fifth Amendment .................................................................... 37

Fourteenth Amendment ............................................................ 37

California Constitution

Article I, section 15 .................................................................... 37

article I, section 30 .................................................................... 15

Statutory Authority

Penal Code section 667, subdivision (e)(1).................................... 18

Penal Code section 687 .............................................................. 37

Penal Code section 954 ............................................................ 4, 5, 6

Penal Code section 954.1 ............................................................ 15

Penal Code section 1023 ............................................................ 37

Vehicle Code section 2800.2.......................................................................... 4

Vehicle Code section 2800.2, subdivision (a)............................................. 18

<u>Rules of Court</u>

Rule 425 ......................................................................................................... 25

Rule 8.504, subdivision (d) .......................................................................... 40

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) Case No. _____ <br> ) <br> ) Court of Appeal No. <br> ) D048488 <br> ) |
|     Plaintiff and Respondent, | |
| v. | ) Superior Court Nos. <br> ) SCS192285 and SCD189369 |
| RAFAEL G. FLORES, | ) <br> ) |
|     Appellant and Petitioner. | ) <br> ) |

## PETITION FOR REVIEW

TO: THE HONORABLE RONALD GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE CALIFORNIA SUPREME COURT:

Appellant and petitioner Rafael G. Flores seeks review in this court following an unpublished decision of Division One of the Court of Appeal for the Fourth Appellate District, filed on October 19, 2007, affirming petitioner's conviction. A copy of that decision is attached as Appendix A.

## QUESTIONS PRESENTED

1. Whether the trial court abused its discretion by granting the prosecutor's motion to consolidate two cases resulting in a denial of petitioner's right to due process and a fair trial.

2. Whether the trial court abused its discretion in allowing the prosecutor to elicit inflammatory and irrelevant evidence that the passenger in petitioner's vehicle was pregnant when there was no evidence that petitioner was the father of the child.

3. For the purposes of exhaustion, whether petitioner's federal constitutional rights to proof beyond a reasonable doubt and a jury trial (U.S. Const., Amends. V, VI, XIV) were violated by the trial court's use of facts that were neither admitted by petitioner nor found by a jury in imposing an aggravated term.

## STATEMENT OF FACTS

Petitioner Rafael G. Flores hereby adopts the statement of facts set forth in the decision of the Court of Appeal.

## ARGUMENT AND AUTHORITY

### I

### THE TRIAL COURT'S ERROR IN GRANTING THE PROSECUTOR'S MOTION TO CONSOLIDATE TWO CASES RESULTED IN A DENIAL OF PETITIONER'S RIGHT TO DUE PROCESS AND A FAIR DETERMINATION OF GUILT AND PUNISHMENT

Petitioner initially was charged in two separate informations, one for each date of offense. On July 6, 2005, the prosecutor moved to consolidate the two cases for purposes of trial. The prosecutor argued in his moving papers that Penal Code section 954 permitted joinder because both cases involved the same class of crimes, evading a police officer with reckless driving. The prosecutor also argued that consolidation would eliminate the need to produce documents and witnesses to establish the prior convictions in separate trials. (Vol. 1 CT 16-17; Aug. RT 1.) Defense counsel objected to consolidation on the ground that consolidation would result in extreme prejudice to petitioner. Counsel alleged that the prosecutor wanted to bolster a case with no positive identification with the other case to make it more likely that the jury would find him guilty on both cases. (Vol. 1 CT 19-20; Aug. RT 1.)

The trial court stated that consolidation is "obviously kind of inherently prejudicial," but is permitted by statute. The trial court noted that both cases involved violations of Vehicle Code section 2800.2 that occurred

within a short period of time. The court found the judicial economy in having the cases tried together to be compelling and granted the motion to consolidate. (Vol. 1 AUG RT 2-3.)

The trial court abused its discretion when it granted the prosecutor's motion to consolidate because it failed to apply the criteria established by the California Supreme Court to guide trial courts in evaluating motions for consolidation or severance. The trial court specifically failed to consider the prejudicial effect of the inflammatory evidence to be presented in one case on the other case. The court also failed to consider the prejudicial effect of joining a strong case with a much weaker case.

After he was convicted by jury of all charges, petitioner moved for a new trial. Petitioner argued again that he was prejudiced by the joinder of the two cases because the prosecutor was able to "bolster a weak identification case with a no identification case." (Vol. 1 CT 157-159.) The trial court denied the motion for new trial as "untimely" because no opposition was filed at time of the motion for consolidation.[1] (Vol. 4 RT 703.)

**The Applicable Law**

Penal Code section 954, statutory authority for joinder of offenses in California, provides in pertinent part: "An accusatory pleading may charge

---

[1] Appellant's opposition to the motion to consolidate actually was filed July

5

two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." (Pen. Code, § 954.)

However, section 954 also contains provisions for severance: "[T]he court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately." (Pen. Code, § 954.) The law prefers consolidation of charges. (*People v. Manriquez* (2005) 37 Cal.4th 547, 574; *People v. Ochoa* (1998) 19 Cal.4th 353, 409.) Joinder is generally found to be proper under section 954 when the offenses charged are of the same class. (*People v. Kraft* (2000) 23 Cal.4th 978, 1030; *People v. Bradford* (1997) 15 Cal.4th 1229, 1315.) The burden is on the defendant to show prejudice. (*People v. Bean* (1986) 46 Cal.3d 919, 938-939.) Motions for severance are evaluated in light of the record when the motion is heard. (*People v. Stitely* (2005) 35 Cal.4th 514, 531; *People v. Sapp* (2003) 31 Cal.4th 240, 258.) Denial of the defendant's motion for severance is

---

6, 2005. (Vol. 1 CT 18-20.)

reviewed for abuse of discretion. (*People v. Manriquez, supra*, 37 Cal. 4th at

p. 574; *People v. Stitely, supra*, 35 Cal.4th at p. 531; *People v. Ochoa, supra*,

19 Cal.4th at p. 408.)

Factors to be considered in assessing the propriety of joinder include:

"(1) the cross-admissibility of the evidence in separate trials; (2) whether

some of the charges are likely to unusually inflame the jury against the

defendant; (3) whether a weak case has been joined with a strong case or

another weak case so that the total evidence may alter the outcome of some

or all of the charges; and (4) whether one of the charges is a capital offense,

or the joinder of the charges converts the matter into a capital case." (*People

v. Cook* (2006) 39 Cal.4th 566, 581; citing *People v. Mendoza* (2000) 24

Cal.4th 130, 161.) Three of these four factors counsel against consolidation

of the charges in this matter.

**Cross-Admissibility of Evidence**

In his moving papers, the prosecutor largely urged the trial court to

consolidate the two cases because separate trials would require the

preparation of duplicate exhibits and duplicate testimony of witnesses from

the Department of Corrections to prove the same priors twice. (Vol. 1 CT

16-17.) Regarding the charges in both cases, the prosecutor alleged only that

it "would be duplicative to have latent print examiners from the San Diego

County Sheriff's Department to have to testify in two separate trials." (Vol. 1 CT 17.) The prosecutor made this argument even while knowing that the cars were processed by different agencies and the prints examined by different latent print examiners.

With a single exception, the evidence surrounding the charges from the February 14, 2005 incident was not admissible to prove the charges against petitioner in the January 16, 2005 incident. Although both incidents stemmed from pursuits involving attempts to evade police officers, each incident was completely separate and involved different cars and different police agencies. National City Police Officers Zeferino (Vol. 2 RT 276-287; 359-364) and Clement (Vol. 2 RT 288-295) were called to testify about the January pursuit while San Diego Police Officers Howard (Vol. 1 RT 139-189) and Marshall and California Highway Patrol Nicholas (Vol. 2 RT 296-335, 353-357) were involved in the February pursuit. National City Police Officer Bull (Vol. 1 RT 236-253) processed the Honda and developed latent prints. Latent print examiner Dianne Do (Vol. 1 RT 254-264) examined the prints from the Honda. Officer Nicholas processed and lifted latent prints from the Lincoln. (Vol. 2 RT 309-311). Latent print examiner Linda Wright (Vol. 1 RT 217-235) examined the prints from the Lincoln. The witnesses to establish the offenses in both cases necessarily would have been called

8

regardless of whether the cases were tried separately or together.

The sole piece of evidence from a February 14th witness that was relevant and admissible as to the January incident was elicited on cross-examination of Melissa Gomez by defense counsel. Defense counsel established that Melissa was related to Gina Alonzo whose mother owned the Honda involved in the January pursuit. Melissa testified that petitioner drove her and Alonzo to a casino in Alonzo's car, helping the defense explain why petitioner's identification was found in Alonzo's car. This bit of cross-admissible testimony was certainly not necessary to establish the charges in either case.

While the evidence to prove the truth of the allegations of prior convictions was cross-admissible, petitioner submits that the cost of presenting such evidence in separate trials was not onerous. Proof of the priors depended almost entirely upon documentary evidence and stipulations regarding fingerprint evidence. (Vol. 3 RT 629-638.) The burden on the court's time and resources required to prove the priors was minimal in contrast to the tremendous prejudice suffered by petitioner to try the two cases together.

**Inflaming the Jury**

The inflammatory impact of the evidence presented to establish the commission of the February incident almost certainly overwhelmed the

jury's ability to fairly judge the evidence as to each charge and resulted in the guilty verdicts on the charges stemming from the January incident. Both incidents involved evading police officers in high speed pursuits and appear to be equally egregious on the surface. However, the prosecution evidence to establish the February pursuit was grossly inflammatory as compared to the minimal evidence presented to establish the January incident.

On January 16, 2005, Officer Zeferino saw a Honda Accord run a red light. Zeferino turned on his lights and siren and pursued the Honda at high speeds until he lost sight of it. (Vol. 2 RT 277-281.) Officer Clement, who heard the broadcast regarding the pursuit, drove in Zeferino's direction and found the Honda abandoned. (Vol. 2 289-290.) A California ID card bearing petitioner's name and date of birth and a loaded .38-caliber revolver were found in the Honda. (Vol. 2 RT 252-253, 291-294.) A print left by petitioner's left ring finger was found the exterior surface of the driver's door. (Vol. 1 RT 243, 247, 261.) No prints were recovered from the revolver. (Vol. 1 RT 230.)

On February 14, 2005, Officers Howard and Marshall were looking for the suspect(s) in a recently reported vandalism when they spotted two men seated in a black Lincoln Town Car with its engine running and its lights off. The Lincoln took off as Howard made a U-turn to pull behind it. Howard turned on his lights and siren and pursued the Lincoln at high speeds through

residential neighborhoods and onto the freeway. (Vol. 1 RT 141-159.) Officer Castro took the lead position in the pursuit after Howard's brakes started to fail. (Vol. 1 RT 149, 159, 192.) The pursuit continued until the Lincoln crashed just past the Ocean View exit on Interstate 15. (Vol. 1 RT 151.) Castro saw Melissa Gomez exit the Lincoln and vault over the median into oncoming traffic. Castro pulled Melissa out of the traffic lanes after she was hit. She was transported to the hospital by paramedics. (Vol. 1 RT 151-152, 184-185, 193-194, 196.)

The evidence then established that 17-year-old Melissa lied to her mother about spending the night at a girlfriend's house. (Vol. 1 RT 38, 138.) Melissa intended to celebrate petitioner's 33rd birthday with him and asked a friend drop her off at petitioner's cousin's house. (Vol. 1 RT 76, 121-122.) Melissa's mother received a call in the early morning hours of February 14, 2005, notifying her that Melissa was in a car accident. (Vol. 1 RT 38.) Melissa spent just over three months in the hospital and had 17 to 22 surgeries. Melissa had a rod inserted into her leg with a pump to drain the infection out of her leg. Flesh and muscle on her leg died and the doctors were forced to remove muscle from Melissa's stomach to use in reconstructing her leg. Skin grafts were also necessary to repair Melissa's leg. (Vol. 1 RT 43-44.)

11

Melissa's leg became infected again after she returned home from the hospital. The doctors thought amputation might be necessary. Melissa became extremely depressed and didn't want to live if amputation was necessary. Melissa saw a therapist and a psychologist for emotional stress. The doctors removed the rod in Melissa's leg and inserted antibiotic beads combat the infection. (Vol. 1 RT 44-45.)

On March 21, 2005, Alicia and her husband went out to dinner to celebrate Alicia's birthday at Melissa's insistence. Alicia told Melissa she was not returning to the hospital that night but returned to surprise Melissa. When opened the door to Melissa's room, she found petitioner lying on the bed next to Melissa. Petitioner attempted to run but Alicia, her husband and son were able to restrain him until security arrived. Alicia later recovered a knife from petitioner's pocket. (Vol. 1 RT 49-51.)

Melissa's brother Rodolfo saw petitioner pick Melissa up in front of the family home late at night. Petitioner never went up to the front door and Melissa never introduced petitioner to her family. (Vol. 1 RT 210-215.) Melissa admitted that she lied to her mother about where she intended to go that night. (Vol. 1 RT 123-126.) She also admitted that she used methamphetamine that day. (Vol. 1 RT 88-89.) Although Melissa denied that petitioner was her boyfriend, she admitted that she was pregnant and lost the baby as a result of treatment for the injuries to her leg. (Vol. 1 RT 114, 138.)

12

Melissa was unable to graduate with her high school class because she missed three months of classes while hospitalized. (Vol. 1 RT 135.)

It is impossible to believe that the evidence of petitioner's relationship with an underage girl almost half his age along with the evidence of the pain and suffering she endured as a result of the accident did not serve to inflame and prejudice the jury against petitioner and cause them to return guilty verdicts on the much weaker case from January without independently evaluating the evidence in that case.

**Combining Strong Case with Weak Case**

As noted above, the January case was relatively weak. Officer Zeferino thought the driver was a male with short hair or a shaved head but did not see any facial features to enable him to identify the driver the fled in the Honda. (Vol. 2 RT 284-285.) Melissa's testimony that petitioner drove her and Alonzo to the casino in Alonzo's car easily explained the presence of petitioner's identification and fingerprint.

The February case was much stronger. Officer Howard was able to clearly see into the passenger compartment of the Lincoln (Vol. 1 RT 145, 147, 166, 175, 178, 180, 184, 186-189, Vol. 2 RT 326) and later positively identified petitioner from a photo line-up. (Vol. 1 RT 171-172.) And, Rodolfo testified that petitioner drove a Lincoln to pick up Melissa. (Vol. 1 RT 210, 324-325.) Melissa's hospital roommate identified petitioner as the

13

man she saw visit Melissa. Petitioner was extremely nervous and drew the curtain around Melissa's bed as soon as he arrived. (Vol. 2 RT 320-321, 328-329, 334, 355.) Furthermore, petitioner attempted to flee when Melissa's family found him in her room. (Vol. 1 RT 49-61.) The spillover effect of the evidence on the February charges undoubtedly influenced the outcome on the January charges.

**Conclusion**

The trial court's decision to allow joinder of petitioner's two cases resulted in a denial of his right to due process and a fair determination of guilt and punishment. Petitioner suffered undue prejudice from being forced to trial on a consolidated information combining a weak case with a strong case containing extremely inflammatory evidence. There is very little doubt that the inflammatory evidence presented on the February incident caused the jury to improperly allocate responsibility and find petitioner guilty on the January incident.

Even if the ruling was correct when made, the judgment must be reversed where the defendant shows that joinder actually resulted in gross unfairness, amounting to a denial of due process. (*People v. Morganti* (1996) 43 Cal.App.4th 643, 673; *People v. Johnson* (1988) 47 Cal.3d 576, 590; accord, *People* v. *Sandoval* (1992) 4 Cal.4th 155, 174.) "[T]he joinder laws must never be used to deny a criminal defendant's fundamental right to due

14

process and a fair trial." (*Williams v. Superior Court* (1984) 36 Cal.3d 441,

448; see also *Belton v. Superior Court* (1993) 19 Cal.App.4th 1279, 1285

[Pen. Code, § 954.1, and Cal. Const., art. I, § 30, added by initiative in 1990,

do not abrogate *Williams*].) Petitioner's convictions must be reversed.

## II

**PETITIONER'S CONVICTION MUST BE REVERSED BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING THE PROSECUTOR TO ELICIT INFLAMMATORY AND IRRELEVANT TESTIMONY ABOUT MELISSA'S PREGNANCY**

The prosecutor requested a sidebar conference with the court in the middle of Melissa Gomez' testimony. Outside of the jury's presence, the prosecutor informed the court he intended to conclude his direct examination of Melissa by saying, "Look, you still love this guy…And you were pregnant with his child." (Vol. 1 RT 111.) Defense counsel objected that this line of questioning was irrelevant because there was absolutely no evidence establishing that petitioner was the father. (Vol. 1 RT 111.)

The prosecutor conceded he had no proof as to the identity of the baby's father, but argued that the evidence was relevant to show why Melissa sought to protect petitioner at trial. (Vol. 1 RT 112.) The trial court allowed the prosecutor to ask Melissa about her pregnancy for the limited purpose of credibility. (Vol. 1 RT 112.) The prosecutor then elicited testimony from Melissa that she was pregnant at the time she was hit by the car and that she lost the baby as a result of the accident. (Vol. 1 RT 113, 138.)

The decision of the Court of Appeal agreed with petitioner that the evidence of Melissa's pregnancy was not relevant to show her bias or

16

credibility absent any showing that petitioner was the father of the unborn child. The court found that trial court abused its discretion in admitting the "irrelevant" evidence but found the error was not prejudicial. (Opn. at pp. 18-19.) The decision of the Court of Appeal was wrong.

The prosecutor clearly recognized the explosive nature of this evidence and asked for a sidebar conference before eliciting the information from Melissa that she was pregnant at the time of the incident and lost the baby. No evidence was introduced as to the paternity of the unborn child and the jurors were left to infer that petitioner was indeed the person who impregnated Melissa. This evidence followed the introduction of evidence that 17-year-old Melissa was dating petitioner, who was twice her age, without knowledge or consent of her parents (Vol. 1 RT 38, 76, 121-122, 138) and evidence of the horrendous injuries Melissa sustained in the accident that almost cost her the loss of her leg. (Vol. 1 RT 43-45.) The irrelevant evidence of Melissa's pregnancy coupled with this other evidence was highly inflammatory and so prejudicial as to render petitioner's trial fundamentally unfair. Petitioner's convictions must be reversed because his right to due process and a fair trial were violated by the erroneous admission of evidence that was both inflammatory and irrelevant. (*People v. Falsetta* (1999) 21 Cal.4th 903, 913.)

17

## III

## THE AGGRAVATED SENTENCE IMPOSED ON COUNT ONE AND THE CONSECUTIVE SENTENCES IMPOSED IN COUNTS THREE AND FIVE MUST BE REVERSED BECAUSE THE SENTENCE WAS BASED ON AGGRAVATING FACTS NOT FOUND TRUE BY A JURY

At the time of sentencing in this matter the trial court selected count one (Veh. Code, § 2800.2, subd. (a)) as the base term and imposed the aggravated term of three years and ordered that term doubled pursuant to Penal Code sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1). The court imposed a consecutive sixteen-month term (one-third of the middle term doubled) for each conviction in counts three (Pen. Code, § 12025, subd. (a)(1)) and five (Veh. Code, § 2800.2, subd. (a)).[2] (Vol. 4 RT 716-719; Vol. 1 CT 164, 209-210.) The court noted petitioner's prior record and prior unsatisfactory performance on probation as aggravating factors. (Vol. 4 RT 716-719.)

### A. The trial court's imposition of an aggravated sentence on count one and consecutive sentences in counts three and five without first affording petitioner a jury trial on the existence of aggravating factors was error under *Cunningham*

The trial court's decision to impose an aggravated term on count one

---

[2] The trial court's imposition of a consecutive 16 month sentence on count two (Pen. Code, § 12021, subd. (a)(1)) was found to be unauthorized and ordered stayed in the decision by the Court of Appeal. (Opn. at p. 27.)

and consecutive sentences in counts three and five must be reversed by this court because petitioner was not afforded and did not waive his right to jury trial on the existence of the facts utilized by the trial court to justify those sentencing choices. (*Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435]; *Cunningham v. California* (2007) 549 U.S. ___ [127 S.Ct. 856, 166 L.Ed. 856].)

### B. Recidivism-based factors

With regard to the use of recidivism-related factors in aggravation, petitioner's contention depends upon the question whether the decision of the United States Supreme Court in *Almendarez-Torres*[3] has any continuing vitality in light of *Apprendi Blakely v. Washington* (2004) 540 U.S. 296 [124 S.Ct. 2531, 159 L.Ed.2d 403] and *Cunningham*. Petitioner contends that the *Almendarez-Torres* decision no longer is valid in light of those decisions. While it is true that the majority opinion in *Apprendi* did not overrule *Almendarez-Torres*, it also is true that the majority expressly avoided the issue and characterized it as possibly being a "narrow exception" to the rule enunciated in *Apprendi*. The defendant in *Apprendi* did not contest the validity of *Almendarez-Torres* and the majority opinion declined, for that

---

[3] *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [118 S.Ct. 1219, 140 L.Ed.2d 350].

19

reason, to address the issue notwithstanding its acknowledgment that it was arguable both that *Almendarez-Torres* was incorrectly decided and that *Apprendi* should apply to "the recidivist issue." (*Apprendi v. New Jersey, supra*, 530 U.S. at pp. 489-490.) Justice Thomas' concurring opinion in *Apprendi* also explained at length why the decision in *Almendarez-Torres* was wrong. (*Id., supra*, 530 U.S. at pp. 501-523; see also *Almendarez-Torres, supra*, 523 U.S. at pp. 256-257, 261 [dis. opn. of Scalia, J].)

Petitioner acknowledges that the court's recent decision in *People v. Black* (2007) 41 Cal.4th 799 (*Black* II) presumes the continuing vitality of *Almendarez-Torres* by holding that the imposition of an aggravated sentence based on a defendant's criminal history does not implicate the Sixth Amendment right to jury trial. (*Id.* at pp. 818-820.)

*Black* II erred both by adopting that conventional interpretation of *Almendarez-Torres* and by adopting a broad view of the *Almendarez-Torres* "exception" to *Apprendi*. (Id. at p. 819.) In *Shepard v. United States* (2005) 544 U.S. 13 [125 S.Ct. 1254, 161 L.Ed.2d 205] the United States Supreme Court cautioned that the "fact of a prior conviction" exception should be read narrowly. *Shepard* addressed the question whether a sentencing court could look to police reports or complaint applications in order to determine whether a prior conviction for burglary by plea constituted a "generic

burglary,"[4] making it a violent felony for the purposes of the Armed Career Criminal Act. *Shepard* answered that question in the negative, holding that a court considering the issue was "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." (*Id.* at pp. 15-16.)

A more limited version of this "categorical approach" was set forth in *Taylor v. United States* (1990) 495 U.S. 575 [110 S.Ct. 2143, 109 L.Ed.2d 607], in which the court held that burglary was a violent felony for the purposes of the Armed Career Criminal Act if the entry was into a building or enclosed space. *Taylor* held that the "later court" making such a determination was limited to examination of the statutory definition of the prior offense and the fact of conviction. *Taylor* also recognized an exception to this "categorical approach" for cases in which the charging instrument alleged an entry into a building and the jury's verdict necessarily included a finding of an entry into a building. (*Shepard v. United States, supra*, 544 U.S. at p. 17.)

The issue came before the United States Supreme Court in *Shepard*

---

[4] A "generic burglary" for the purposes of the Armed Career Criminal Act means a burglary of a building or enclosed space. States with "non-generic" burglary statutes also include acts such as entries into vehicles or boats. (*Shepard v. United States, supra*, 544 U.S. at pp. 15-17.)

21

after the District Court declined the prosecution's suggestion that the court should review the police reports and applications for issuance of the complaint in order to determine whether the burglary in *Shepard* was a generic burglary. (*Shepard v. United States, supra,* 544 U.S. at pp. 17-18.) The First Circuit reversed the District Court, finding that the police reports and applications for issuance of the complaint were "sufficiently reliable evidence for determining whether a defendant's plea of guilty constitutes an admission to a generically violent crime." (*Id.* at p. 18.)

During the hearing on remand the prosecution submitted police reports and complaint applications for two additional burglaries. (*Shepard v. United States, supra,* 544 U.S. at p. 18.) Shepard submitted an affidavit in which he pointed out both that none of the facts contained in the police reports were elicited or read by the court during his pleas and he was not asked during those pleas whether the facts in those reports were true. (*Id.* at p. 18.) The District Court again declined to impose the mandatory minimum 15-year sentence, finding that the prosecution had failed to meet its burden of proving that Shepard had admitted the commission of three generic burglaries. (*Id.* at pp. 18-19.)

The United States Supreme Court granted certiorari after the Circuit Court of Appeals again reversed and directed the District Court to impose the 15-year minimum sentence. (*Shepard v. United States, supra,* 544 U.S. at

22

p. 19.) The government raised several arguments before the Supreme Court in support of modifying the "categorical approach" outlined in *Taylor*. (*Id.* at pp. 20-23.)

The Supreme Court declined to depart from *Taylor*, in part out of concern that to do so would infringe a defendant's right to jury trial under the Sixth Amendment. (*Shepard v. United States, supra*, 544 U.S. at pp. 23-24.) The court noted that the record of conviction in a state with a non-generic burglary statute would not establish the fact necessary to make the offense a generic burglary "as it would be in a generic State when a judicial finding of a disputed prior conviction is made on the authority of *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)." (*Id.* at p. 25.) The court held that "the disputed fact about a prior conviction" was too far removed from the "conclusive significance of a prior judicial record" to find that *Almendarez-Torres* authorized a judge to resolve the dispute. (*Id.* at p. 25.)

Petitioner acknowledges that the portions of *Shepard* discussed above were joined only by a plurality of the court comprised of Justices Souter, Scalia, Ginsberg and Stevens. This court need only look to the concurring opinion authored by Justice Thomas, however, to conclude that a clear majority of the United States Supreme Court will, at the very least, limit the *Almendarez-Torres* "exception" to the fact of conviction as opposed to facts

"about a prior conviction" such as whether a defendant has performed poorly on probation or parole. Justice Thomas declined to join the plurality opinion and claimed -- much the same as has petitioner in this brief -- that a majority of the Justices now believe that *Almendarez-Torres* was wrongly decided and argued that even the limited judicial fact-finding authorized by the plurality's "refinement" of *Taylor* resulted in constitutional error. (*Shepard v. United States, supra*, 544 U.S. at pp. 26-28, conc. opn. of Thomas, J.)

Shepard thus provides this court with a relatively rare case in which discerning the meaning of a plurality opinion is not merely a speculative reading of judicial tea leaves. Four Justices of the United States Supreme Court will permit judicial fact-finding *only* about the fact *of* conviction and not of facts *about* a conviction. A fifth Justice would not even permit the limited judicial fact-finding authorized by the plurality. The adoption of the broad view of the "recidivism exception" in *Black* II was erroneous.

## C. Consecutive sentences and *Cunningham*

Penal Code section 667.6, subdivision (c), provides a discretionary alternative sentencing scheme to Penal Code section 1170.1 that permits the imposition of a full and consecutive sentence when specified offenses are committed against the same victim on the same occasion. (*People v. Belmontes* (1983) 34 Cal.3d 335, 343-346; *People v. Hicks* (1993) 6 Cal.4th

24

784, 789.) The decision to sentence a defendant under section 667.6, subdivision (c) rather than under section 1170.1 "is essentially a decision concerning consecutive sentencing to which the factors listed in rule 425 are relevant." (*People v. Belmontes, supra*, 34 Cal.3d at pp. 346-347.)

Because the decision to sentence under section 667.6, subdivision (c) entails exactly the same determination required before a consecutive sentence can be imposed under section 1170.1, petitioner contends that he had the right to a jury trial on the existence of the facts relied upon by the trial court in reaching its decision to impose a consecutive sentence under 667.6, subdivision (c).[5]

**D. The violation of petitioner's right to jury trial and proof beyond a reasonable doubt was not harmless.**

Denial of the right to jury trial on the existence of aggravating facts is reviewed on appeal under the harmless error standard of review set forth in *Neder v. United States* (1999) 527 U.S. 1 [119 S.Ct. 1827, 144 L.Ed.2d 35]. (*Washington v. Recuenco* (2006) 548 U.S. ___ [126 S.Ct. 2546, 165 L.Ed.2d 466], slip opn. at pp. 6-8.; *People v. Sandoval* (2007) 41 Cal.4th 825, 838.) Under *Neder*, reversal is required if, after a thorough examination of the

---

[5] Whether a defendant is entitled to a jury determination of the factors used by the court to impose sentence under section 667.6, subdivision (c) was answered in the negative in *People v. Prieto* (2004) 124 Cal.App.4th 941. The court granted review in that case but subsequently dismissed review in light of the decision in *Black*.

record, a reviewing court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error. (*Neder v. United States, supra,* 527 U.S. at p. 19)

Recuenco suggests this court should find that the error in this matter was not harmless beyond a reasonable doubt because California does not have a statutory procedure for submission of the issue whether aggravating facts exists to a jury. Recuenco argued that harmless error analysis could not be conducted in his case because Washington state law provided no procedure for a jury to determine whether a defendant was armed with a firearm. (*Washington v. Recuenco, supra,* 548 U.S. ___ [126 S.Ct. 2546, 165 L.Ed.2d 466], slip opn. at p. 3.) The United States Supreme Court avoided that question, finding that Washington State law was not clear as to whether Washington state law provided such a procedure. (*Id.,* slip opn. at pp. 3-4.) Significantly, however, the court held that although the absence of a procedure for submitting the issue to a jury would not require *per se* reversal, it would suggest that Recuenco would be able to prove that the error was not harmless beyond a reasonable doubt in his particular case. (*Id.,* slip opn. at p. 4.)

Recuenco is important because the issue avoided by the United States Supreme Court -- whether Washington law provided a procedure for submitting to the jury the question whether Recuenco was armed with a

26

firearm -- cannot be avoided in this case. There is no ambiguity in California statutory law as to the existence of a procedure for submission to a jury the question whether one or more facts in aggravation exist. No such procedure exists. Subdivision (b) of Penal Code section 1170 assigns the duty to determine the existence of aggravating facts to the trial court.

Because there is no statutory procedure in California for the submission of the issue of existence of aggravating facts to the jury, this court cannot say that the jury verdict would have been the same absent the error. (*Neder v. United States, supra*, 527 U.S. at p. 19.) The jury simply could not have returned the findings as to the existence of the aggravating facts found by the trial court because there is no procedure by which the issues could be submitted to the jury.

Even if the court disagrees with that contention, petitioner contends that the error in this matter cannot be deemed harmless because this court cannot find beyond a reasonable doubt that the error did not contribute to the sentencing determination. Petitioner acknowledges that *Sandoval* has taken a different view of harmless error analysis under *Neder* than the analysis petitioner is urging this court to undertake. *Sandoval* held that harmless error analysis under *Neder* requires reviewing courts to determine whether a jury would have found *any* the individual facts in aggravation rather than whether the error contributed to the sentencing determination itself. (*People v.*

27

*Sandoval, supra,* 41 Cal.4th at p. 839.) *Sandoval* held that no constitutional error has occurred if a defendant is eligible for an aggravated term under the DSL based on factors that have been established consistent with the requirements of the Sixth Amendment. (*Id.* at p. 838.)

Petitioner submits that the *Sandoval* prejudice analysis is incorrect and unconstitutional because the prejudice analysis in *Neder* addresses the ultimate decision made by the jury rather than the component findings of fact necessary to that ultimate decision. The ultimate decision in the context of sentencing is the sentencing choice itself, not the finding of factors that support the sentencing decision. The mere finding of a single fact in aggravation ordinarily does not, in and of itself, require the imposition of an aggravated sentence. Under the DSL the trial court is required to render a sentencing decision based on a weighing of aggravating factors against mitigating factors.

Petitioner submits that the only remedy constitutionally possible under these circumstances is the reversal of the sentence imposed by the trial court with directions to the trial court to impose the middle term on count one and concurrent sentences in counts three and five. Retrial on the existence of aggravating factors is not constitutionally permissible for the reasons set forth below and it's difficult to see how a court can be permitted to resentence based on the aggravating facts a reviewing court held that a

jury *would have* found true, which is precisely the result reached in *Sandoval.*

Neither *Neder* nor *Cunningham* provides much guidance as to how *Neder* should be applied to this matter but *Neder* does suggest two relevant inquiries: Whether the defendant contested the issue and adduced sufficient evidence to support a contrary finding by a jury and whether the evidence as to the issue was overwhelming. (*Neder v. United States, supra,* 527 U.S. at pp. 17, 19.)

Petitioner submits that both inquiries support a finding that the denial of petitioner's right to jury trial was not harmless under *Neder.* As noted in *Sandoval,* the court cannot assume that "the record reflects all of the evidence that would have been presented had aggravating circumstances been submitted to the jury" because the aggravating facts relied upon by the trial court -- and the intent and objectives of petitioner -- were not elements of the charged offenses. (*People v. Sandoval, supra,* 41 Cal.4th. at p. 839.) Petitioner did not have either a reason or the opportunity to challenge the existence of the facts ultimately relied upon by the trial court.

The court also cannot be confident that the factual record would have been the same had the existence of the aggravating facts been tried to a jury because petitioner did not have had the same incentive and opportunity to

29

challenge the existence of the aggravating facts during the sentencing hearing that would have existed during a trial before a jury with proof beyond a reasonable doubt. (*People v. Sandoval, supra,* 41 Cal.4th at p. 840.) Nor should the court be confident that its evaluation of the proof of aggravating facts would be the same as an evaluation made by a jury because whether petitioner's prior convictions were of increasing severity necessarily would be based on broad, vague and subjective standards. (*Id.* at p. 840.)

Whether a jury would have found the aggravating facts relied upon by the trial court beyond a reasonable doubt is not at all certain. As *Sandoval* noted, the fact that the issues were not litigated before the jury in this matter actually should make it harder for this court to deem the trial court's error harmless based on a finding that the evidence on the issues was "overwhelming." The determination that evidence as to a particular fact is overwhelming should be made only when the issue actually has been litigated either directly or indirectly. The denial of petitioner's right to jury trial cannot be deemed harmless under *Neder* or *Sandoval.*

## IV

**THE APPROPRIATE REMEDY IN THIS MATTER IS THE MODIFICATION OF PETITIONER'S SENTENCE TO THE MIDDLE TERM ON COUNT ONE AND CONCURRENT SENTENCES IN COUNTS THREE AND FIVE BECAUSE A REMAND FOR RESENTENCING UNDER *SANDOVAL* WOULD DENY PETITIONER DUE PROCESS AND VIOLATE HIS CONSTITUTIONAL PROTECTION AGAINST DOUBLE JEOPARDY**

Because the aggravating facts used by the trial court to justify its sentencing choices were not found true by a jury, the only appropriate remedy in this matter is a remand to the trial court with directions to the trial court to impose no more than the middle term on count one. Imposition of any other sentence is barred by the due process and double jeopardy clauses of the California and United States Constitution.

Petitioner acknowledges that the *Sandoval* decision held that the appropriate remedy for a violation of the right to jury trial and proof beyond a reasonable doubt is, essentially, a remand for a court trial on the existence of the facts used by the trial court both to aggravate petitioner's sentence and to avoid the operation of Penal Code section 654. The trial court would be required to consider both aggravating and mitigating circumstances but it would have broad discretion to select the aggravated term without the necessity of any additional judicial fact-finding. (*People v. Sandoval, supra,* 41 Cal.4th at pp. 843-846.)

31

### A. Due process and the ex post facto clause

*Sandoval* asserts that the judicial procedure adopted in *Sandoval* would not have the effect of increasing petitioner's sentence because petitioner already has been sentenced to the aggravated term. (*People v. Sandoval, supra,* 41 Cal.4th at p. 855.) *Sandoval* claims that "the difference in the amount of discretion exercised by the trial court in selecting the upper term under the former DSL, as compared to the scheme we adopt for resentencing proceedings, is not substantial." (*Id.* at p. 855.)

What *Sandoval* ignores, however, is that a sentencing court really did not have discretion to impose an aggravated term under the former DSL unless and until the existence of an aggravating fact was established either by an admission or by proof beyond a reasonable doubt in a jury trial. *Sandoval* has changed that by converting a situation in which a sentencing court had no discretion -- and in which the sentencing choice was reviewed on appeal under *Neder* harmless error analysis -- to a situation in which that same sentencing court has broad discretion that that does not require any fact-finding and is subject only to the most deferential standard of review on appeal.

There really is little room to question that removal of the rights to jury trial and proof beyond a reasonable doubt violate the due process clause of the United States Constitution. There can be no question but that the

33

*Sandoval* remedy has done precisely what is proscribed by the ex post facto law. It is perhaps for that reason that *Sandoval* asserts that the *Sandoval* remedy derives from the court's judicial power to craft procedures rather than from a retroactive application of the DSL as amended by the Legislature in response to *Cunningham*. (*People v. Sandoval, supra*, 41 Cal.4th at pp. 855-857.) By asserting that the *Sandoval* remedy is a judicially created procedure *Sandoval* avoids the application of the ex post facto clause. (*Id.* at p. 855.)

*Sandoval*'s attempt to find support for its ruling in *Rogers v. Tennessee* (2001) 531 U.S. 451 [121 S.Ct. 1693, 149 L.Ed.2d 697] is misplaced. As *Sandoval* notes, *Rogers* does in fact stand for the proposition that the due process clause does not require the application of strict ex post facto principles in the context of judicial decision-making. (*People v. Sandoval, supra*, 41 Cal.4th at p. 855, citing *Rogers v. Tennessee, supra*, 532 U.S. at p. 459.) What *Sandoval* ignores, however, is that *Rogers* dealt with a judicial construction enlarging the statutory definition of murder in Tennessee by eliminating the common-law requirement that the victim must die within a year and a day of the attack. (*Id.* at pp. 454-456.) *Sandoval* did not purport to enlarge any particular criminal statute. *Sandoval* instead eliminated two constitutional protections afforded to all defendants who faced sentencing under the former version of the DSL.

34

Nor is the decision in *Rogers* dispositive of the issues in this matter in any case. The majority opinion in *Rogers* acknowledged that its previous decision in *Bouie v. City of Columbia* (1964) 378 U.S. 347 [84 S.Ct. 1697, 12 L.Ed.2d 894] contained language supporting a claim that the due process clause incorporates the specific prohibitions of the ex post facto clause, but held that that language was mere dicta. The *Rogers* majority distinguished *Bouie*, noting that the decision in *Bouie* was rooted in established concepts related to due process. (*Rogers v. Tennessee, supra,* 532 U.S. at p. 459.)

The *Rogers* majority then found that the abolition of the common-law year and a day rule in Tennessee was neither unexpected nor indefensible. (*Rogers v. Tennessee, supra,* 532 U.S. at p. 462.) The majority noted that the rule was widely viewed as an outdated relic and had been abolished in the vast majority of the jurisdictions that had recently reviewed the rule. (*Id.* at pp. 462-463.) The majority observed that the year and a day rule did not exist in the Tennessee statutes and that it "had only the most tenuous foothold as part of the criminal law of the State of Tennessee," having only been mentioned in dicta in three reported cases. (*Id.* at p. 464.)

None of those observations can be said to apply even remotely to the issues presented in this matter. The change in law effected by *Sandoval* did not enlarge the scope of a criminal statute such as the Tennessee murder statute considered in *Rogers*, it removed valuable constitutional protections

35

afforded to all defendants who with charged with any offense punishable under the former version of the DSL. The constitutional rights to jury trial and proof beyond a reasonable doubt are not outdated relics with a tenuous foothold in California law. Those rights have been in existence since the Bill of Rights was added to the United States Constitution.

The elimination or reduction of those constitutional rights results in an interaction between due process and the ex post facto clause that was not present in *Rogers*. *Rogers* was grounded in "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." (*Rogers v. Tennessee, supra*, 532 U.S. at p. 459.) Fundamental fairness under the due process clause extends beyond the concepts of notice and foreseeability. In *Carmell v. Texas* (2000) 529 U.S. 513 [120 S.Ct. 1620, 146 L.Ed.2d 577], an ex post facto case, the United States Supreme Court held that the retroactive reduction of burden of proof violated the fourth category of the ex post facto clause. (*Id.* at p. 531.) Demonstrating the overlap between the due process and ex post facto clauses with regard to reduction of the burden of proof, the court noted:

> "There is plainly a fundamental fairness interest, even apart from any claim of reliance or notice, in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life." (*Carmell v. Texas, supra*, 529 U.S. at p. 533.)

36

Whether grounded in the ex post facto clause or in the due process clause, there can be no question about what *Sandoval* has done. In the words of Justice Scalia, "To begin with, let us be clear that the law here was altered after the fact." (*Rogers v. Tennessee, supra,* 532 U.S. at p. 468, dis. opn. of Scalia, J.) That change eliminated petitioner's constitutional right to jury trial and reduced the constitutionally required quantum of proof. *Rogers* may be correct in holding that strict application of the principles of the ex post facto clause are not always required by due process, but strict application of those principles, and in particular of the fourth category of prohibited ex post facto laws, certainly is required under the mantle of due process in this case.

### B. Double Jeopardy under the United States and California Constitutions

"The double jeopardy clause of the Fifth Amendment to the United States Constitution guarantees that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb,' and is made applicable to the states through the due process clause of the Fourteenth Amendment." (*People v. Fields* (1996) 13 Cal.4th 289, 297; *People v. Carter* (2005) 36 Cal.4th 1215, 1239; *Benton v. Maryland* (1969) 395 U.S. 784, 794 [89 S.Ct. 2056, 23 L.Ed.2d 707].) Article I, section 15 of the California Constitution and Penal Code sections 687 and 1023 provide protections that are similar or greater than the protections afforded criminal defendants under the United

States Constitution. (*People v. Massie* (1998) 19 Cal.4th 550, 565; *People* v. *Fields*, *supra*, 13 Cal.4th at p. 298; *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 352-355.)

The double jeopardy clause affords criminal defendants three protections. A defendant cannot be subjected to a second prosecution for the same offense after acquittal or after conviction. Nor can an individual be subjected to multiple punishments for the same offense. (*People v. Massie*, *supra*, 19 Cal.4th at p. 563; *Schiro v. Farley* (1994) 510 U.S. 222, 229 [114 S.Ct. 783, 127 L.Ed.2d 47], quoting *North Carolina v. Pearce* (1969) 395 U.S. 711, 717 [89 S.Ct. 2072, 23 L.Ed.2d 656].) The Clause secures for the defendant the "'valued right to have his trial completed by a particular tribunal.'" (*Oregon v. Kennedy* (1982) 456 U.S. 667, 671-672 [102 S.Ct. 2083, 72 L.Ed.2d 416]; *Crist v. Bretz* (1978) 437 U.S. 28, 35-36 [98 S.Ct. 2156, 57 L.Ed.2d 24]; *People v. Marshall* (1996) 13 Cal.4th 799, 824-825.) This guarantee "lies in the need to protect the interest of an accused in retaining a chosen jury," and has "roots deep in the historic development of trial by jury in the Anglo-American system of criminal justice." (*Crist v. Bretz*, *supra*, 437 U.S. at pp. 35-36.)

Because it now is clear that the presence of an aggravating factor creates a greater offense to the charged offense -- effectively making the charged offense a lesser included offense -- any remand for a new sentencing

"hearing" or a new jury empanelled for a new trial on the aggravating factors would violate the Double Jeopardy Clause because jeopardy from petitioner's trial terminated when the trial court discharged the original jury. (*Green v. United States* (1957) 355 U.S. 184, 191 [78 S.Ct. 221, 2 L.Ed.2d 199].)

Dated: 6·15·2008

Respectfully submitted,

RAFAEL G. FLORES
IN PRO SE

39

VERIFICATION

STATE OF CALIFORNIA        )On this day, LISTED COURT PLEADINGS WERE GIVEN TO
                          )
COUNTY OF IMPERIAL         )PRISON OFFICIAL FOR FILING/MAILING

(C.C.P. SEC. 446 & 2015.5; 28 U.S.C. sec 1746)

I, _Rafael Flores_ declare under penalty of perjury that:
I am the _Petitioner_ in the above-entitled action; I have read
the foregoing documents and know the contents thereof; and the
same is true of my own knowledge except as to matters stated
therein upon information and belief, and as to those matters, I
believe they are true.
    Executed this _15_ day of _June_, 20_08_, at Centinela
State Prison, P.O. Box _911_, Imperial, Ca. 92251.

                        [Signature] _Rafael O. Flores_
                        DECLARANT/PRISONER

*************************************************

PROOF OF SERVICE BY MAIL
(C.C.P. sec. 1013(a) & 2015.5; 28 U.S.C. sec 1746.)

I _Douglas Calhoun_, am a resident of Centinela
State Prison in the County of Imperial, State of California;
I am over the age of eighteen (18) years and am not a party of
the above-entitled action. My state prison address is:
_P.O. Box 911, T-13874 - B5-249_, Imperial, Ca. 92251.

On _June 15_, 20_08_, I served the foregoing:

_3 copies of Federal Habeas corpus Petitions_

(Set forth the exact title of document(s) served.)

on the party(s) herein by placing a true copy(s) thereof, enclosed
in a sealed envelope(s), with postage thereon fully paid, in the
United States Mail, in a deposit box so provided at Centinela
State Prison, P.O. Box _911_, Imperial, Ca. 92251, addressed
as follows:

_United States District court, Southern District_
_Rm. 4290, 880 Front St._
_San Diego, Calif. 92101-8900_
There is delivery service by United states Mail at the so
addressed; and/or there is regular communication by mail between
the place of mailing and the place so addressed. I declare under
penalty of perjury that the foregoing is true and correct.

DATED: _June 15_, 20_08_        _Rafael Flores_
                                DECLARANT/PRISONER

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

Rafael Garcia Flores

**FILED**

**JUN 18 2008**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Tiltion

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED    Imperial
PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Rafael Garcia Flores
PO Box 911
Imperial, CA 92251
F-22302

ATTORNEYS (IF KNOWN)

'08 CV 1086 BEN BLM

| **II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY) | | **III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT (For Diversity Cases Only) | | | |
|---|---|---|---|---|---|
| | | | PT DEF | | PT DEF |
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ☐1 ☐1 | Incorporated or Principal Place of Business in This State | ☐4 ☐4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III | Citizen of Another State | ☐2 ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 ☐5 |
| | | Citizen or Subject of a Foreign Country | ☐3 ☐3 | Foreign Nation | ☐6 ☐6 |

**IV. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

## 28 U.S.C. 2254

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| | | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 862 Black Lung (923) | |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23    DEMAND $    Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions):    JUDGE    Docket Number

DATE    6/18/2008

SIGNATURE OF ATTORNEY OF RECORD

R Mully

CR