

FILED
2010 MAR 29 PM 12:08
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL GARCIA FLORES,<br><br>                                Plaintiff,<br>vs.<br><br>MICHAEL SMELOSKY, Warden,<br><br>                                Defendant. | CASE NO. 08-CV-1086 BEN (BLM)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS WITH PREJUDICE** |

      Before this Court is Petitioner's petition for habeas relief under 28 U.S.C. § 2254 ("Petition"). On February 12, 2009, Magistrate Judge Major filed a Report and Recommendation, recommending that the Petition be denied with prejudice. Petitioner filed an Objection to the Report and Recommendation. Although the Objection was untimely, the Court will and does consider it here. (See Docket Nos. 19 and 21.)

      After reviewing the Report and Recommendation and Petitioner's Objection, the Court **ADOPTS** the Report and Recommendation issued by Magistrate Judge Major and **DENIES WITH PREJUDICE** Petitioner's Petition.

**FACTUAL BACKGROUND**

      This Court gives deference to state court findings of fact and presumes them to be correct. 28 U.S.C. § 2254(e)(1). Petitioner does not produce clear and convincing evidence showing that the factual findings are incorrect. *Id.* A summary of the facts as found by the state court are as follows:

      On March 21, 2005, Petitioner was arrested and charged in two separate complaints for charges

arising from evading police officers with reckless driving on January 16 and February 14, 2005, respectively. After the trial court granted the prosecutor's motion to join the two cases, the case proceeded to trial.

### 1. *January 16, 2005 Incident*

On January 16, 2005, just after midnight, a National City Police Officer pulled up behind a white Honda Accord that was stopped at a stoplight. Just as the Officer pulled up, the driver of the Honda Accord, who appeared to be an Hispanic male with short or shaved hair, accelerated through the red light. A high speed car chase ensued, during which the driver ran at least 10 stop signs, violated the speed limit in residential neighborhoods, failed to yield for cross-traffic, and narrowly missed a pedestrian crossing one intersection. The driver of the Honda Accord ultimately abandoned the car, at which time another National City Police Officer discovered Petitioner's California identification card on the floorboard and a loaded revolver between the driver's seat and the door of the car.

A subsequent investigation revealed that the primary driver of the Honda was Gina Alonzo, who knew Petitioner. Petitioner had visited Alonzo several times at her home, during which Alonzo's cousin, Melissa Gomez, had also been present. Alonzo did not own a revolver. Alonzo also had not given Petitioner permission to drive the car on the night of the incident and, in fact, had reported the car stolen the next morning when she discovered it missing.

Forensic testing revealed a fingerprint belonging to Petitioner on the exterior of the Honda. No prints were recovered from the revolver.

### 2. *February 14, 2005 Incident*

On February 14, 2005, around midnight, a San Diego Police Officer was on patrol with his partner in Sherman Heights, investigating a complaint of vehicle vandalism. During that time, the Officer observed a black Lincoln Town Car parked on the street, with his engine running. The Officer decided to investigate and, therefore, drove by the car and shined his spotlight into the car. The Officer observed two male occupants, one of which was the driver who was Hispanic and was wearing a beanie or cap. The Officer then made a U-turn and pulled up behind the car, at which time the driver took off. A high speed car chase ensued.

1  When the Officer's brakes began to fail, another San Diego Police Officer took over the lead.
2  He followed the Lincoln as it ran several more lights and stop signs, and then onto the freeway where
3  the Lincoln crashed. Two men and one woman fled the car and ran across the freeway. The woman
4  was hit by on-coming traffic and severely injured.

5  The woman was Melissa Gomez. Evidence showed that Gomez had a personal, if not intimate,
6  relationship with Petitioner. Gomez and Petitioner were in frequent contact both before and after the
7  incident. As a result of her injuries from the accident, Gomez suffered a lost pregnancy and underwent
8  several complex surgeries. Gomez testified at Petitioner's trial. Gomez denied that Petitioner had told
9  her what to say at trial. Fingerprints and testimony from Gomez and Gomez's family linked Petitioner
10 to the Lincoln.
11 Lodgment 6, at 4-11.

## PROCEDURAL BACKGROUND

13 On December 16, 2005, a jury convicted Petitioner of (1) evading on two separate occasions,
14 (2) hit and run driving, (3) possession of a firearm by a felon, (4) carrying a concealed firearm in a
15 vehicle by a felon, and (5) carrying a loaded firearm in a vehicle by a felon. Lodgment 1, at 202-07.
16 The trial court sentenced Petitioner to eleven years in state prison. Lodgment 2, vol. 4 at 717.

17 Petitioner appealed to the California Court of Appeals, raising three claims for relief.
18 Lodgment 3. In a reasoned opinion dated October 19, 2007, the Court of Appeal modified the
19 Petitioner's sentence, reducing his total term to nine years and eight months, but otherwise affirmed
20 the judgment. Lodgment 6.

21 On November 16, 2007, Petitioner filed a petition for review in the California Supreme Court
22 Lodgment 7. On January 7, 2008, that court denied the petition without citation to authority.
23 Lodgment 8.

24 On June 18, 2008, Petitioner filed a petition for habeas relief under 28 U.S.C. § 2254 in this
25 Court. (Docket No. 1.) The Petition alleges Petitioner was denied his constitutional right to due
26 process and fair trial based on the trial court's joinder of his two cases at trial (Claim One), the trial
27 court's admission of allegedly irrelevant and inflammatory evidence (Claim Two), and the trial court's
28 denial of a jury trial on the issue of whether aggravating factors exist that could enhance Petitioner's

sentence (Claim Three).

Respondents filed an Answer to the Petition, and Petitioner filed a Traverse. (Docket Nos. 11, 18.)

On February 12, 2009, Magistrate Judge Major issued a Report and Recommendation, recommending that the Petition be denied with prejudice. (Docket No. 19.)

On March 9, 2009, Petitioner filed an Objection to the Report and Recommendation. (Docket No. 21.) Respondent did not file a reply.

## DISCUSSION

To present a cognizable federal habeas corpus claim, a state prisoner must allege that his conviction was obtained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner must allege that the state court violated his federal constitutional rights. *Hernandez v. Ylst*, 930 F.2d 714, 719 (9th Cir. 1991).

In *Lockyer v Andrade*, 538 U.S. 63 (2003), the United States Supreme Court stated a federal habeas court is not required "to adopt any one methodology in deciding the only question that matters under § 2254 (d)(1)–whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 71 (citation omitted). A federal court is not, therefore, required to review the state court decision de novo. *Id.* Rather, a federal court may proceed directly to the reasonableness analysis under § 2254(d)(1). *Id.* Additionally, a state court need not cite Supreme Court precedent when resolving claims presented on direct or collateral review. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

Where, as here, the case has been referred to the Magistrate Judge for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636, a district judge "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b); *see* 28 U.S.C. § 636(b)(1). "[T]he court shall make a de novo determination of those portions of the [Report and Recommendation] to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). "The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection

1  is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

In this case, the Magistrate Judge found, among other things, Petitioner failed to exhaust his first claim for relief, i.e., his claim that the trial court abused its discretion in granting the prosecution's motion to consolidate the two cases. (R&R, pgs. 11-12.) As to Petitioner's second and third claims for relief, the Magistrate Judge found that these claims were properly exhausted. (R&R, pgs. 21, 26.) Petitioner did not object to these findings in his Objection to Report and Recommendation. (Docket No. 21.) In the absence of any objections, the Court **ADOPTS** the Report and Recommendation's findings relating to exhaustion. As to the other findings in the Report and Recommendation, and Petitioner's objections thereto, the Court addresses those findings as follows.

## I.   CONSOLIDATION OF PETITIONER'S TWO STATE COURT CASES AT TRIAL (CLAIM ONE)

Notwithstanding Petitioner's failure to exhaust his first claim for relief, the Court will address the merits of Petitioner's claim, as permitted under 28 U.S.C. § 2254(b)(2). See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).

Petitioner claims the trial court abused its discretion in granting the prosecution's motion to consolidate the two cases. Specifically, Petitioner claims he was prejudiced by the joinder of a weaker case, i.e., the January incident, with a stronger case, i.e., the February incident. (Obj. R&R, pgs. 2-3.) The Court reviews this claim de novo. 28 U.S.C. § 636(b)(1) ("[T]he court shall make a de novo determination of those portions of the [Report and Recommendation] to which objection is made.")

The Supreme Court has recognized that "all joint trials... furnish inherent opportunities for unfairness when evidence submitted as to one crime (on which there may be an acquittal) may influence the jury as to a totally different charge." *Spencer v. State of Texas*, 385 U.S. 554, 562 (1967). Nonetheless, the potential for unfairness is justified on the grounds that the jury is expected to follow instructions in limiting this evidence to its proper function and the convenience of trying different crimes against the same person in the same trial is a valid governmental interest. *Id.*

"Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446, n. 8 (1986). Therefore, this Court does not consider whether joinder was improper under state law, but rather whether, assuming joinder was improper, it resulted in prejudice so great as to violate Petitioner's Fifth Amendment right. *Id.* Four factors apply: (1) whether overwhelming evidence of guilt was shown, (2) whether the trial court provided a "proper limiting instruction... admonish[ing] the jury to consider each count and defendant separately," (3) the likelihood that evidence admitted on one count would have been admissible in a separate trial on the other court, and (4) whether the evidence as to one count was distinct and easily segregated from the evidence relating to the other count(s). *Id.* at 450 and n. 13.

In this case, as detailed in the Report and Recommendation, the prosecution presented strong evidence as to each case. (R&R, pgs. 16-17.) The trial court also instructed the jury to consider each count charged against Petitioner separately, and to return a separate verdict as to each count. Lodgment 2, vol. 3 at 559. Additionally, as noted by the Court of Appeal and the Magistrate Judge, because the evidence of Petitioner's evading crimes was substantially similar, the trial court could have found that evidence of one crime was admissible in a separate trial on the other count. Lodgment 6 at 15. Furthermore, because different police officers were involved in the two separate incidents, and all involved officers testified at trial, the evidence as to the January incident was distinct and easily segregated from evidence relating to the February incident. *Lane*, 474 U.S. at 450 and n. 13.

Although Petitioner argues he was prejudiced because the trial court did not allow him to present evidence of prejudice arising from the consolidation of the two cases, even if this were true, the Court notes that Petitioner has still not presented evidence of prejudice by way of his Petition or Objection to Report or Recommendation. In light of the above, the Court concludes that the Court of Appeal's finding that Petitioner failed to demonstrate prejudice was not contrary to, or an unreasonable application of, clearly established federal law; therefore, Petitioner's first claim for relief is **DENIED**.

///

///

## II. ADMISSION OF ALLEGEDLY IRRELEVANT AND INFLAMMATORY TESTIMONY (CLAIM TWO)

Petitioner alleges his constitutional right (presumably under the due process clause of the Fourteenth Amendment) was violated when the trial court admitted evidence of Melissa Gomez's lost pregnancy. (Petition, pg. 12-13, 23-24; Obj. R&R, pg. 3.) To the extent Petitioner claims his rights were violated because evidence of the lost pregnancy "had nothing to do with [the] January case" (Obj. R&R, pg. 3), that claim lacks merit for the reasons stated above regarding consolidation of the two cases.

The trial court admitted Gomez's testimony for the limited purpose of establishing credibility, agreeing with the prosecutor that Gomez had not been clear on her relationship with Petitioner and, if Petitioner was the father, the evidence would show Gomez had a possible reason to protect him at trial. Lodgment 6 at 16-17. The Court of Appeal concluded that the trial court abused its discretion in admitting this evidence because, by the prosecutor's own admission, the record contained no evidence that Petitioner was the father. Lodgment 6 at 16-19. However, the Court of Appeal determined that the error was harmless under *Chapman v. California*, 386 U.S. 18, 23-24 (1967). *Id.* at 19.

Petitioner is entitled to habeas relief only if, assuming the trial court erred in admitting the evidence–which the Court assumes here only for purposes of this Order–the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). In this case, as noted above, the government presented strong evidence that Petitioner recklessly evaded police in the February incident. Lodgment 6 at 19. Officer Howard confirmed in testimony that he identified Petitioner as the driver of the Lincoln, ample evidence showed Petitioner had driven the car that night, Petitioner's fingerprint was found on the car, and the evidence showed Petitioner drove the car recklessly and evaded officers before crashing and fleeing from the scene. *Id.* at 7-9, 19. Therefore, the jury had ample evidence, aside from Gomez's testimony, to find Petitioner guilty of the charged offenses.

Even if Gomez's testimony had not been admitted, it is not reasonably probable that Petitioner would have obtained a more favorable outcome. *Id.* Other evidence included a photo strip of Gomez

and Petitioner kissing, testimony from Gomez's family that Gomez had a relationship with Petitioner, and Petitioner's wearing of a necklace bearing Gomez's name, each of which independently demonstrated that Gomez had a dating relationship with Petitioner and, thus, a possibility of bias towards Petitioner. As the Report and Recommendation notes, evidence of the pregnancy may have reinforced, but did not create, this bias.

Additionally, the trial admonished the jury both before and after the pregnancy evidence that the jury was to consider this information for purposes of credibility only. As a general rule, the court may presume that jurors followed the trial court's instructions. *Kansas v. Marsh*, 548 U.S. 163, 179 (2006); *Gibson v. Ortiz*, 387 F.3d 812, 822 (9th Cir. 2004).

In light of the above, the Court concludes that any error by the trial court in admitting Gomez's pregnancy testimony did not have a substantial and injurious impact on the jury's verdict. *Brecht*, 507 U.S. at 638. As such, the Court finds that the Court of Appeal's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Thus, Petitioner's second claim for relief is **DENIED**.

### III.   USE OF PRIOR CONVICTION IN SENTENCING (CLAIM THREE)

The trial court imposed an upper sentence on count one and consecutive sentences in counts three and five at sentencing. Petitioner argues the trial court's failure to afford Petitioner a jury trial on the existence of aggravating factors before sentencing was error under *Cunningham v. California*, 549 U.S. 270 (2007) and violated his Sixth Amendment right. In his Objection to Report and Recommendation, Petitioner specifically objects to the imposition of the upper term on count one and the Magistrate Judge's finding that such sentencing without jury fact-finding was neither a violation of *Cunningham* nor a violation of the Sixth Amendment. (Obj. R&R, pgs. 3-4.) Petitioner does not object to the Magistrate Judge's finding that the imposition of consecutive sentences in counts three and five did not violate his federal rights. Therefore, this Court only reviews de novo Petitioner's claim relating to the upper sentence and, **ADOPTS** the finding in the Report and Recommendation relating to consecutive sentences. *See* 28 U.S.C. § 636(b)(1).

California adopts a determinate sentencing scheme under which the statute defining each offense prescribes three precise terms of imprisonment–a lower, middle, and upper term sentence.

*Cunningham*, 549 U.S. at 277. Under *Cunningham*, the trial court must impose the middle term unless circumstances in aggravation or mitigation exist. *Id.* The fact that a defendant has one or more prior convictions is often considered a circumstance in aggravation.

Other than the fact of a prior conviction, any aggravating factor that increases the penalty for a crime beyond the middle term must be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 288-89; *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Almendarez-Torres v. United States*, 523 U.S. 224, 230, 243 (1998). This carveout applicable to prior convictions is also known as the *Almendarez-Torres* exception. *See Butler v. Curry*, 528 F.3d 624, 645 (9th Cir. 2008). Petitioner argues the trial court erred in applying the *Almendarez-Torres* exception to impose an upper term sentence without first affording him a jury trial.

Petitioner's argument lacks merit. Although some members of the Supreme Court have called into question the continued validity of *Almendarez-Torres*, it has never been overruled. *Id.* at 643. Recently, the Ninth Circuit confirmed that lower courts have an obligation to continue applying *Almendarez-Torres*. *Id.* at 643-44. In Petitioner's case, the lower court based the upper term conviction for count one on the fact that Petitioner had no circumstances in mitigation and at least two circumstances in aggravation, including "numerous" prior convictions and unsatisfactory probation performance. Lodgment 6 at 20-1; Lodgment 2, vol. 4 at 716. It is undisputed that neither aggravating circumstance was put before the jury. Therefore, poor probation performance cannot justify the imposition of the upper term. However, where, as here, "at least one of the aggravating factors on which the judge relied in sentencing [] was established in a manner consistent with the Sixth Amendment, [the] sentence does not violate the Constitution." *Butler*, 528 F.3d at 643; *see also People v. Black*, 41 Cal.4th 799, 813 (2007). Here, the prior convictions do support the upper term sentence. Lodgment 6 at 20-1; Lodgment 2, vol. 4 at 716. Therefore, based on clearly established Supreme Court precedent as it currently stands, it is neither a violation of the Sixth Amendment nor *Cunningham* for a judge to impose an upper term sentence based on a prior conviction without jury fact-finding. *Apprendi*, 530 U.S. at 490; *Cunningham*, 549 U.S. at 288; *Butler*, 528 F.3d at 643.

The Court concludes that the Court of Appeal's decision rejecting Petitioner's *Cunningham* claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

Therefore, Petitioner's third claim for relief is **DENIED**.

## CONCLUSION

In light of the above, the Court finds Petitioner has failed to establish that the California state courts' decisions were contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d). The Court further finds Petitioner has not demonstrated that factual development is necessary such that an evidentiary hearing is warranted. 28 U.S.C. § 2254(e)(2). Accordingly, the Court **DENIES** Petitioner's Petition for Writ of Habeas Corpus and **ADOPTS** the Report and Recommendation to **DISMISS** the case with prejudice.

**IT IS SO ORDERED.**

Date: 3/18/2010

Hon. Roger T. Benitez
Judge, United States District Court